IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| JOSE R. DELGADO, JR., ) | CASE NO. 06-30439-H3-13 |
| ) | |
| Debtor ) | |
| ) | |

<u>MEMORANDUM OPINION</u>

Came on for hearing the Chapter 13 Fee Application of Debtor's Counsel (Docket No. 40) filed by Reese W. Baker. After consideration of the pleadings, evidence, testimony and argument of counsel, the court makes the following Findings of Fact and Conclusions of Law granting in part and denying in part the Fee Application. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

FINDINGS OF FACT

Reese W. Baker ("Applicant") filed this Chapter 13 Fee Application and Statement in Support requesting fees of $3,974.00 and expenses in the amount of $313.50 for his representation of Jose R. Delgado, Jr. ("Debtor") from January 31, 2006 to June 16, 2006. Docket Nos. 40 and 44. Applicant charges $290 per hour and the other attorneys he works with charge between $200 and $275 per hour. Paralegals are billed per hour between $55 and $85. The

application reflects 8.1 hours of attorney time and 19.6 hours of paralegal time were expended on this case.

No objections to the fee application were filed. However, at the hearing on the fee application, the Chapter 13 Trustee, William E. Hetikamp ("Trustee"), orally opposed approval of these fees. The Application is opposed on the basis that the fees are excessive as the results obtained are not commensurate with the time expended.

This case was filed on February 16, 2006. This is the Debtor's second Chapter 13 proceeding. Debtor was represented by two other counsel in his first case, Case No. 03-34846-H3-13. In the first case, Debtor's schedules were amended two times. The first case was dismissed on November 16, 2005 on the Chapter 13 Trustee's motion for failure to make plan payments. The court takes judicial notice of the docket, file and pleadings in Case No. 03-34846-H3-13. The above captioned chapter 13 proceeding was filed on behalf of Debtor by Applicant approximately two months after dismissal of the first case. Applicant testified that the instant proceeding was filed to prevent foreclosure on Debtor's home.

Due to the fact that Debtor had two cases pending within the past year, Applicant filed an Emergency Motion for Continuation of the Automatic Stay (Docket No. 13) which was granted by the court (Docket No. 20). The Trustee did not recommend confirmation

of the first plan proposed by Debtor in the instant case due to deficiencies in the plan.[1] Additionally, Washington Mutual, a creditor holding a secured claim on Debtor's principal residence, in the principal amount of $19,500, filed an Objection to Confirmation. Docket No. 29. This Objection was withdrawn after Debtor filed an Amended Plan. Docket No. 39. Debtor's Amended Chapter 13 Plan (Docket No. 33) was confirmed by the court on May 25, 2006. Docket No. 37. No separate Disclosure of Compensation was filed by Applicant, but the plan provides for attorney's fees in the amount of $3,500.

Applicant testified that Debtor consulted him to discuss filing bankruptcy as a result of his house having been posted for foreclosure. After the initial consultation, Debtor returned for a second consultation several days prior to the foreclosure date. Applicant testified that Debtor is an elderly man who speaks little English. As a result, a paralegal in Applicant's office participated in client conferences and the creditors' meeting as a translator.

Applicant testified that he spent a significant amount of time with Debtor obtaining the information necessary to get the schedules and other required documents filed. Applicant testified that Debtor advised him that the schedules filed in his prior case

---

1. The deficiencies were Debtor's failure to provide payment in full for secured claims, failure to file his 2005 income tax return, and failure to file all information required by section 521 of the Bankruptcy Code.

were not correctly done, resulting in more time being spent on the collection of additional information.  He discussed with Debtor the reasons for dismissal of the first case, the change in circumstances of Debtor's finances since dismissal of that case, and the necessity of filing a motion to extend the automatic stay in the instant case.

Further, Applicant testified that a lot of time was spent on the instant case because Debtor believed he was behind in his mortgage payments by approximately $5,500 while Washington Mutual claimed that the arrears were $7,500.  Additional time was spent working with Debtor to complete and file tax returns for the years 2002 through 2005.  Applicant testified that in order to accurately assess, from a business perspective, and complete Schedules I and J and the "means test,"[2] he had to assist Debtor in recreating business records from an auto and body paint shop Debtor operated.

---

[2]. As the instant case was filed subsequent to the effective date of the 2005 Amendments to the Bankruptcy Code, the new statute is applicable.  Applicant's reference to the "Means Test" relates to the requirement under Section 521 that a debtor file a statement of income and expenditures.  In a case under chapter 7, the court or United States trustee may determine from this statement that the debtor has sufficient excess income to satisfy the indebtedness and that the debtor should not have the relief of a chapter 7 discharge.  Section 707(b) sets forth the applicable formula or "means test" to be applied.  In Chapter 13, the 2005 amendments altered the method of determining the debtor's income and expenses in arriving at a figure representing a debtor's disposable income.  In Chapter 13, a debtor is required to file a "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income."  Under section 1325(b)(3), for debtors with current monthly income above the applicable state median income for their household size, reasonably necessary expenses are to be calculated using the means test formula in section 707(b)(2)(A) and (B) in order to determine payments to unsecured creditors.

Time was also spent on resolving outstanding arrest warrants issued for Debtor by a local court in Brenham, Texas.

Notwithstanding the necessity of filing a motion to have the automatic stay extended, the court finds that the instant case is a straightforward, simple Chapter 13 proceeding. Verification of the accuracy of information included in a debtor's schedules and Statement of Financial Affairs is required for any bankruptcy filing. Further, all debtors are under a duty pursuant to the provisions of the Bankruptcy Code to file certain prescribed documents and statements, including Schedules I and J, and, in a Chapter 13 proceeding, a "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." See 11 U.S.C. § 521.

The discrepancy in the amount of the arrears owed to Washington Mutual, approximately $2,000, should have been relatively easy to resolve. Washington Mutual is the only secured creditor. No special legal analysis or exercise of professional judgment is necessary to determine the treatment of this secured creditor. It is not unusual to be presented with issues of this type in a Chapter 13 proceeding.

In awarding fees, the court must consider whether the services were necessary and reasonable in light of the benefit to the estate. Despite fees incurred in connection with standard services rendered in a typical Chapter 13 proceeding, it appears

that the fees expended were high for resolving what was essentially a $2,000 controversy.  The court finds the fees in this case are high for the results achieved.

The court has reviewed the time records and list of expenses of the Applicant submitted in support of its fee application.  The court finds that some of the fees incurred for the services rendered are entitled to compensation.  Applicant did perform some standard services in the instant case which the court finds compensable. Applicant prepared the schedules and Chapter 13 plan and amended plan.  Applicant or an attorney from his office appeared at the creditors' meeting, hearings on confirmation, and a hearing on Trustee's dismissal motion.  Additionally, Applicant spent time on the preparation and filing of a motion to extend the automatic stay and appeared at the hearing held on this motion.

After consideration of the Chapter 13 Trustee's objection, the testimony of Reese Baker, the description of the services rendered and the results obtained, the court reduces the requested fees of the Applicant.  The court awards attorney's fees in the amount of $3,000 and costs in the amount of $313.50.

CONCLUSIONS OF LAW

Section 330(a)(4)(B) of the Bankruptcy Code provides that, in a Chapter 13 case, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case

based on a consideration of the benefit and necessity of such services to the debtor, and the other factors set forth in Section 330. 11 U.S.C. § 330(a)(4)(B). These other factors include the time and amount spent on such services, the rates charged for such services, whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of the case, whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed, and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than bankruptcy cases. 11 U.S.C. § 330(a)(3); *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

Section 329(a) of the Bankruptcy Code requires that any attorney representing a debtor file "a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a).

The disclosure requirements are imposed because, *inter alia*, there are instances in which debtors will not object to their attorney's fee applications because they may be in no position to

make an objective judgment as to the value of the legal services involved, and may lack the inclination to object to whatever fee is requested. *Halbert v. Yousif*, 225 B.R. 336 (E.D. Mich. 1998).

The bankruptcy court has an independent duty to review fee applications, notwithstanding the absence of objections by the United States trustee, creditors, or any other interested party. *In re Busy Beaver Building Centers*, 19 F.3d 833 (3rd Cir. 1994). *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 n. 1 (9th Cir. 1985); *In re Wilde Horse Enter., Inc.*, 136 B.R. 830, 839-40 (Bankr. C.D. Cal. 1991); 11 U.S.C. § 330(a)(1); Bankruptcy Rule 2016.

Professional services must be of value to the administration of the estate or of benefit to the estate in order to be compensable. *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr. N.D. Tex. 1986). Courts in the Fifth Circuit use the lodestar method to calculate attorneys' fees. *Shipes v. Trinity Industries*, 987 F.2d 311, 319-20 (5th Cir.) *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993). After determining the lodestar amount, the court may adjust the lodestar up or down in accordance with the relevant factors not already included in the lodestar. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

The court should not have to guess or spend excessive court time to justify a fee for an applicant who has not done so for himself or herself. The court is not required to audit time

records in order to attempt to determine what was reasonable, what was necessary, and what the result was for each endeavor. *See In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 736 (Bankr. N. D. Ill. 1988). Rather than implementing reductions on a "line by line" basis, and without expending extensive court resources to track down every entry, as well as making a line by line disallowance of those entries that are insufficiently substantiated, one court has taken a "rough justice" approach. *See In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. E.D.Mass. 1991).

Based upon the above findings and conclusions, the court will enter a separate Judgment in conjunction with this Memorandum Opinion denying in part and granting in part the requested fees. The expenses incurred are awarded to Applicant.

Signed at Houston, Texas on this 2nd day of November, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE